# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ANTHONY J. NATALE,**

        **Plaintiff,**

**-vs-**                                            **Case No. 6:07-cv-18-Orl-31DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Defendant's administrative decision to deny Plaintiff's application for social security disability insurance benefits. The Court has reviewed the administrative record, the briefs of the parties, and the applicable law. For the following reasons, the decision of the Commissioner is **AFFIRMED.**

### *PROCEDURAL HISTORY*

Plaintiff filed his present application[1] for disability insurance benefits on July 31, 2002 (R. 71-73), asserting an onset date of February 1, 1996. The application was denied initially and on reconsideration, and Plaintiff requested and received an administrative hearing before an Administrative Law Judge ("the ALJ") (R. 435-485). The ALJ issued an unfavorable decision on March 16, 2005, finding Plaintiff not disabled (R. 21-29). Plaintiff requested a review of the hearing decision, which was denied by the Appeals Council (R. 10-12). Thereafter, Plaintiff submitted additional evidence to the Appeals Council (R. 7-8) and requested that the case be reopened and for

---

[1] He previously filed applications in 1998 (R. 65-67) and 2000 (R. 68-70), both of which were apparently denied administratively and not pursued.

additional time to file a civil action. On December 1, 2006, the Appeals Council reviewed the additional evidence and denied Plaintiff's request to review the ALJ's decision, making the ALJ's decision the final decision of the Commissioner; however, Plaintiff was given more time to file a civil action (R. 5-7).  Plaintiff's suit was thus timely filed (Doc. No. 1) and this case is now ripe for review under section 205(g) of the Social Security Act , 42 U.S.C. § 405(g).

### *NATURE OF CLAIMED DISABILITY*

Plaintiff alleges disability beginning February 1, 1996, due to breathing problems/COPD[2], dizziness and glaucoma (R. 89, 444-47).   As his insured status expired on September 30, 1996 (R. 74), the period at issue is February 1, 1996 (alleged onset) through September 30, 1996 (date last insured).  Plaintiff was sixty-two years of age at the hearing, but was fifty-three years of age at the time of the alleged onset, and fifty-four at the date last insured (R. 440).  He had obtained his GED[3] and had prior relevant work experience as a van driver for a transportation company (R. 26, 441-44).

As acknowledged by Plaintiff in his brief, the evidence of Plaintiff's condition following his onset date and prior to the date last insured is the most crucial (Doc. No. 16 at 5); as noted by the ALJ, however, there is very little medical evidence for that period (R. 25).  By way of summary, in 1993, prior to the onset date, Plaintiff had a severe left ear problem, diagnosed as a cholesteatoma  (R. 247). Plaintiff underwent surgery for this (R. 245), and the cholesteatoma was successfully removed (R. 201).  Although Plaintiff presented to his doctor on March 7, 1996, complaining of intermittent left ear pain and pressure, examination showed a healthy middle ear and mastoid cavity and his doctor

---

[2]Chronic Obstructive Pulmonary Disease.

[3]General Equivalency Diploma.

concluded that his symptoms were "mostly due to nasal congestion." (R. 185). It was noted that Plaintiff had failed to come in for yearly checks, as instructed, and was still smoking.

On August 30, 1996, Plaintiff presented to Magruder Eye Institute (R. 320). Plaintiff was diagnosed with advanced primary open angle glaucoma and underwent a laser trabeculoplasty on September 10, 1996, in an attempt to get his eye pressures down to an acceptable level (R. 311, 315). He underwent subsequent surgery in December 1996 (R. 304). Latter records indicate that the surgeries were not wholly successful, and Plaintiff continued to undergo treatment well after the date last insured.

There are no records with respect to Plaintiff's alleged COPD in the time frame at issue. On February 17, 2005, a year prior to the date of onset, Plaintiff presented to a physician assistant with cold symptoms (R. 190). Examination revealed no audible wheezing, no respiratory distress and lungs were clear without rales, rhonchi or wheezing. *Id.* Diagnosis was intercostal myositis, upper respiratory infection. Just ten days later, on February 27, 1995, Plaintiff presented to one of his providers (the name is illegible) complaining of chest tightness and cough (R. 189). Examination revealed "tight bronchial cough/ rhonchi" and diagnosis included sinusitis/bronchitis and "early COPD?" *Id.*

On February 17, 1997, after the date last insured, Plaintiff returned to his provider, with a two day history of shortness of breath (R. 181). It was noted that he smoked three packs a day, and the cough had been going on "for months." Plaintiff was noted to be in mild respiratory distress, but no rales were heard on examination. Assessment was 1) asthma exacerbation and 2) COPD, and medication was prescribed. Shortly thereafter, on February 24, 1997, Plaintiff saw a physician's assistant, complaining of increased wheezing and shortness of breath (R. 180). He reported that his

breathing was "definitely below baseline, although he has been continuing to work with this." This time, on examination, there were audible wheezes and shortness of breath, with occasional rhonchi. It was noted that he had not been taking his medications as prescribed. Medications were again prescribed, and Plaintiff was advised "no work for the next several days." *Id.*

On July 2, 1997, Plaintiff presented to the Florida Ear and Balance Center, complaining of chronic dizziness over a four month period (R. 325). He was diagnosed with otitis media, chronic.

Well after the date last insured, Plaintiff underwent pulmonary functioning testing, and on April 22, 1998, Plaintiff was noted to have "extremely severe chronic obstructive pulmonary disease" (R. 261). A state agency physician determined that Plaintiff met the listings for disability based on his COPD as of January 1998, but opined that there was insufficient medical evidence of record for the date last insured (R.161). Plaintiff underwent a consultative examination on November 30, 1998, and the examiner confirmed severe COPD secondary to smoking, as well as left sided otitis media (R. 358-360). The examiner opined that Plaintiff was restricted to light physical or sedentary type work only (R. 360).

Plaintiff and his wife testified at hearing, as did a Vocational Expert ("VE") and a medical expert retained by the Commissioner. The medical expert opined that he felt that Plaintiff had COPD during the period at issue, but acknowledged that there was no objective medical evidence for that time period to support that opinion (R. 476-78). The VE testified as to the existence of jobs available, based on the hypothetical presented (R. 478-84). After reviewing the evidence and testimony at the hearing, the ALJ determined that, as of the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform light work, but should avoid crowds, stores, fumes, odors, dust and gases as well as machinery and heights (R. 26, 28 finding 6). The ALJ found Plaintiff had a severe

impairment, and relying on the testimony from the VE, determined that the Plaintiff could perform a significant number of jobs during the relevant period (R. 25-27) and was therefore not disabled.

## STANDARDS OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## ISSUES AND ANALYSIS

Plaintiff raises three issues on review:  1) whether the ALJ erred in failing to find Plaintiff's COPD and visual limitations to be severe impairments resulting in significant limitations; 2) whether

the ALJ erred in his evaluation of the opinion of the medical expert; and 3) whether the ALJ posited a hypothetical question that did not adequately reflect the limitations of the claimant. The Court treats each, in turn.

### *Severe Impairments*

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having severe hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make specific and well-articulated findings as to

the effect of the combination of impairments when determining whether an individual is disabled. *Id.*, 985 F.2d at 534.

Here, Plaintiff correctly notes the light burden of establishing severity at step two of the analysis:

> Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. Claimant need show only that her impairment is not so slight and its effect is not so minimal.

*McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). Plaintiff contends that the ALJ "ignore[d]" Plaintiff's vision problems and COPD at step two of the evaluation, and thus failed to consider all of Plaintiff's impairments, in combination. The Court disagrees.

With respect to Plaintiff's glaucoma, while it is true that the ALJ did not make a specific step two finding regarding this impairment, she certainly did not ignore it. The ALJ discussed the vision treatment records within the time period at issue (R. 24), included the vision impairment in the hypothetical presented to the VE (R. 484) and formulated Plaintiff's RFC explicitly taking into account and crediting Plaintiff's "vision problems." (R. 26). Thus, the ALJ made an implicit finding at step two, and continued to consider the vision impairment throughout the remaining steps of the evaluation. As such, any error is harmless. *See Diorio v. Heckler,* 721 F.2d 726 (11th Cir. 1983) (finding errors harmless where ALJ actually applied the appropriate grid, although he "misspoke" a different vocational factor).

As for the ALJ's failure to list Plaintiff's COPD as a severe impairment during the time in issue, the Court sees no error. As acknowledged by Plaintiff, medical evidence of this condition during this time period is "sparse, at best" (Doc. No. 16 at 13). In fact, the earliest confirmed

diagnosis of the impairment is February 17, 1997, almost five months after the date last insured (R. 181). At that time, Plaintiff presented with a "two day" history of shortness of breath and cough (R. 181).

Plaintiff contends that the notes of the next visit, on February 24, 1997,[4] are "extremely important because it clearly shows that Plaintiff had been previously treated for [COPD], this was not a new condition, and had even been prescribed a nebulizer for his home prior to February, 1996." (Brief at 14). Plaintiff is incorrect on his facts. Initially, although Plaintiff refers to this treatment note as containing observations of Dr. Hurst, the record cited is a treatment note of a physician's assistant (R. 180). Indeed, the note indicates that Plaintiff was to "follow up with Dr. Hurst in two weeks." Moreover, the "previous treatment" could well be the treatment of February 17, 1997, the first mention of confirmed COPD in Plaintiff's records (R. 181). It is also worth noting that Plaintiff was diagnosed on February 17 with "asthma exacerbation," as well as COPD. The nebulizer is a common treatment method for asthma sufferers. The note contains no record indicating that he had been prescribed a nebulizer for his home for COPD, prior to February 1996. In short, the note does not establish a long-standing course of treatment for COPD in the relevant time period, as Plaintiff appears to suggest.

The mere onset or diagnosis of a disease or an injury does not establish that it became disabling during the insured period. *Benjamin v. Apfel*, 2000 WL 1375287, *8 (S.D. Ala. 2000). Here, even if the ALJ were to have credited Plaintiff with the impairment of COPD during the insured period, there is no medical evidence as to any treatment for the condition (thus, no evidence as to its

---

[4] Plaintiff misquotes the date as February 28, 1996.

severity)[5] and no evidence to support a finding that the condition was vocationally limiting. Indeed, no permanent work limitations were specified during the time period (even five months after expiration of insured status, the provider recommended only no work "for the next several days") and, in fact, Plaintiff reported that he continued to work with this condition (R. 180). The ALJ's determination that the claimed impairment of COPD was not supported by *any* objective medical evidence during the relevant period and that Plaintiff "failed to show that his impairments caused any vocationally functional limitations" is supported by substantial evidence.

### *Medical Expert*

Plaintiff contends next that the ALJ "erred in assigning no weight to the opinion of the medical expert who testified at the hearing, that, in his experience, the claimant had pulmonary and vision problems prior to the date last insured." (Brief at 25).

Initially, the Court notes that, in fact, the ALJ gave considerable weight to the medical expert's opinion with respect to the vision impairment. At hearing, the medical expert testified that Plaintiff had peripheral vision limitations and thus would have been unable to drive and "would probably have to be careful in a crowd in a store because he can't really see very well to the side." (R. 471). In her opinion, the ALJ noted that Plaintiff would not be able to return to his past relevant work as a driver, specifically noted that Plaintiff "would also need to avoid crowds and stores based on his vision problems, according to the medical expert" (R. 26), and incorporated this limitation in her formulation of Plaintiff's RFC (R. 28).

As for the COPD, the ALJ discounted the opinion of the medical expert "as it is not supported by medical evidence during the period in question." (R. 25). Plaintiff contends that the ALJ erred in

---

[5]Moreover, the lack of any office visits, hospitalizations or other treatment supports an inference that the condition was *not* severe at the time.

this determination, because "the opinion of the medical expert was based on his experience and, thus, should have been accorded some weight." The Court finds that Plaintiff has misstated the standard for consideration of a medical expert's opinion.

There is no rule that ALJ's must automatically give controlling weight to the opinion of a non-treating medical expert. SSR 83-20, relied upon by Plaintiff, notes only that:

> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.
> \*\*\*
>
> The available medical evidence should be considered in view of the nature of the impairment (i.e., what medical presumptions can reasonably be made about the course of the condition). The onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in SGA (or gainful activity) for a continuous period of at least 12 months or result in death. Convincing rationale must be given for the date selected.

The regulations and agency rulings make clear that the service of the medical expert is that of an expert witness; to be evaluated by the ALJ, along with all of the other evidence of record. *See* SSR 96-6 (noting that the ALJ may not ignore these opinions and must explain the weight given to these opinions); Regulations 20 CFR 404.1527 and 416.927 (setting forth detailed rules for evaluation of medical opinions). While substantial weight must be given to the opinion, diagnosis and medical evidence of a *treating* physician, unless there is good cause to do otherwise, *see Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d), the ALJ may discount a physician's opinion or report regarding an inability to

work if it is unsupported by objective medical evidence or is wholly conclusory. When a physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). There is no support for a contention that the opinion of a non-treating medical expert should be evaluated any differently than opinions of other physicians.

Applied here, the ALJ's discounting of the medical expert's opinion was supported by substantial evidence and is consistent with the above standards. At hearing, the medical expert acknowledged the absence of *any* medical records referencing Plaintiff's pulmonary disease for the time at issue (R. 463, 466, 476-77). He testified that "based on documentation I can't document that he had COPD" during that time, noting: "I'm sure he had COPD then but I don't know the severity until 1998 at which time it was extremely severe and clearly had that impairment." (R. 467). When pressed, the ME noted that he could "only infer" an impairment in 1996 (R. 472-73) and when asked by Plaintiff's counsel whether he had "any opinions as to whether or not [Plaintiff] would have met a listing in regard to his COPD prior to September of 1996," the ME answered: "No, I really can't [sic] not when I don't have any objective documentation." (R. 476-77). Faced with such equivocal testimony and a complete absence of medical evidence supporting the expert's inference, the ALJ did

not err in discounting it.[6] *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

### *Hypothetical*

The Plaintiff is correct that case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id*. at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)). Plaintiff is incorrect, however, in contending that the ALJ did not meet this standard.

Plaintiff asserts that the hypothetical presented to the VE did not accurately portray all the limitations found by the medical expert in that the ME stated that "there are many things that he [Plaintiff] could not do" and the ALJ did not inquire as to what those other things were and did not include them in the hypothetical. As with several of Plaintiff's contentions, this, too, is factually inaccurate.

The relevant record excerpt reads as follows:

> Q. And using the residual functional capacity assessment he would have a limitation in his vision. Would you be able to give us any idea as to what type of limitation he would have in his vision?
> A. Well, he would be unable to drive. He would probably have to be careful in a crowd in a store because he can't really see very well to the side. *So there are many things that he could not do.* But as far as activities of daily living and that sort of thing that would not be a problem.

---

[6]Note that this was not a situation where a claimant clearly had an impairment during the relevant time period and the issue is when that impairment reached a particular level of severity; here, the medical expert could only infer the existence of the impairment and could not opine at all as to the severity during the time at issue.

(R. 471 (emphasis added)).

The addition of the word "so" following the itemization of things Plaintiff could not do (drive, be in a crowded store), omitted by Plaintiff in his brief, makes it clear that the medical expert was not referring to a host of other non-specified limitations, but rather was referring to the previously described tasks that did not require good peripheral vision. There is no support for a contention that there are other non-disclosed limitations.[7] As the ALJ included the vision limitations in the hypothetical presented to the VE (R. 479-84), there is no error.

## *CONCLUSION*

A final word is in order. There can be no doubt that Plaintiff's current situation meets the definition of disability. At issue, however, is not whether Plaintiff is currently disabled, but whether substantial evidence supports the ALJ's conclusion that, during the relevant time period (over 10 years ago), he was not. The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511. In the final analysis, the ALJ reviewed the evidence (sparse as it was) and determined that Plaintiff did not meet this criteria for the time period at issue. As that decision is supported by substantial evidence and was made in accordance with proper legal standards, the Court cannot disturb it.

---

[7] The Court also notes that Plaintiff was represented by counsel at the hearing and was provided an opportunity to question the ME, but did not ask for any elaboration of this statement.

      The decision of the Commissioner is therefore **AFFIRMED.** The Clerk is directed to enter judgment accordingly and to close the file.

      **DONE** and **ORDERED** in Orlando, Florida on January 25, 2008.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record